**Clover HAYES, Petitioner-Appellant,**

v.

**Ross MAGGIO, Jr., Warden and William J. Guste, Jr., Attorney General of the State of Louisiana, Respondents-Appellees.**

No. 82–3163.

United States Court of Appeals, Fifth Circuit.

Feb. 7, 1983.

Rehearing Denied March 10, 1983.

---

Katherine Wheeler, Baton Rouge, La., for petitioner-appellant.

Kay Kirkpatrick, Asst. Dist. Atty., Baton Rouge, La., for respondents-appellees.

Before JOHNSON, WILLIAMS and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

I.

Clover Hayes, a Louisiana state prisoner, entered a plea of guilty to first degree murder in the Nineteenth Judicial District Court of Louisiana on October 15, 1973, and was sentenced to life imprisonment. He is before us seeking federal habeas corpus relief under 28 U.S.C. § 2254. He has exhausted his state court remedies. *See* *Hayes v. Blackburn,* 377 So.2d 853, 853 (La. 1979). After denial of relief by the state courts, Hayes filed this petition. It was referred to a U.S. Magistrate who conducted an evidentiary hearing and recommended denial of relief. Hayes objected to the Magistrate's report, and after consideration of the objections and a *de novo* review of the record, the United States District Court for the Middle District of Louisiana, Judge John V. Parker, denied the petition and dismissed the suit. Petitioner has timely appealed that decision to this court.

II.

The record and evidence of the sordid crime presented at the evidentiary hearing showed that the charge to which Hayes pleaded guilty stemmed from the murder of Billy Middleton, a Baton Rouge pharmacist, who was shot and killed during the course of an attempted robbery of his store on April 10, 1973. Petitioner Hayes and two of his high school classmates were arrested and indicted for murder and attempted armed robbery. Hayes voluntarily confessed that he was the "lookout" man for the robbery. On May 3, 1973, an attorney was appointed to represent Hayes.

On the date of Hayes's trial, the district attorney entered a plea bargain in return for Hayes's plea of guilty on the murder charge. The substance of that plea bargain is in dispute.

On October 15, 1973, the state district judge conducted a *Boykin* hearing to ascertain the voluntariness of Hayes's plea. Satisfied that the plea was made voluntarily and with an understanding of the nature of the charge against him and the consequences of his plea, the state court judge accepted the plea of guilty and sentenced Hayes to imprisonment for the remainder of his natural life.

III.

In his federal habeas petition, Hayes maintains that (1) he was not fully informed about the nature of the charge against him; (2) he was not fully informed about the permissible range of sentence; (3) he failed to receive effective assistance of counsel as required by the sixth amendment; and (4) that his plea of guilty was involuntary since it was induced by unkept promises of the district attorney. There was conflicting testimony in the record with respect to these issues which the district court resolved against the petitioner as noted *infra.* As a petitioner in a habeas corpus action, Hayes bears the strong burden of showing that he is entitled to habeas corpus relief. *Williford v. Estelle,* 672 F.2d 552, 553 (5th Cir.1982).

### A.

Because the record supports Hayes's allegation that he was standing across the street during the time that the actual murder and attempted robbery occurred, Hayes contends that "aiding and abetting" or "counseling or procuring" is an essential element of the offense charged. Therefore, he argues that he should have been, but was not, adequately informed of the nature of the offense.

■ The district court found that Hayes was adequately informed of the charge against him both by his appointed counsel and by the state court judge during his *Boykin* examination and these findings are supported by the record.

### B.

Hayes next submits that he was not accurately informed of the sentencing consequences of his plea. He contends that he was not told that he would receive a life sentence, but rather that he was told that he would only serve some period of time and then be eligible for parole.

The district court found that petitioner's attorney informed Hayes of the possibility of a life sentence. His attorney testified that "... I'm sure I went through all the charges and went through what he would be convicted of and what the crime was and what have you." "And you explained to him that he would receive a life sentence if he pleaded guilty to this charge?" "I explained everything to him at that time."

■ The findings of fact by a district court in a federal habeas corpus case will not be set aside unless they are clearly erroneous. *Hernandez v. Estelle,* 674 F.2d 313, 314 (5th Cir.1981). Although the testimony was conflicting, petitioner's attorney testified that he informed Hayes of both the elements of the crime charged and the possibility of a life sentence should he decide to plead guilty. The district court credited this testimony. The district court's findings are not clearly erroneous.

### C.

Next Hayes contends that his counsel was ineffective. He argues that his court-appointed attorney's ineffectiveness stems from his failures to inform him about the elements of the offense charged; correct the misinformation about parole; research the nature of an unrelated armed robbery charge which he says was part of the plea bargain; request a change of venue; seek a severance; review Hayes's alleged confession; and test the voluntariness of that alleged confession.

The district court found that the attorney informed Hayes of the nature of the offense, of the possibility of a life sentence, and of the terms of the plea bargain. These findings are not clearly erroneous. Moreover, the record shows that his attorney explained all the ramifications of the charges against him, and of the plea bargain; that he talked to Hayes, to attorneys for Hayes's co-defendants and extensively to petitioner's friend and counselor, Wood, and to the district attorney; and that he and his whole office investigated the case.

Hayes's court-appointed attorney had been in practice for twelve years at the time he was appointed to Hayes's case. He represented Hayes from the time of his appointment until he was sentenced, a period of approximately six months. He was present both at the time Hayes pleaded guilty and during the sentencing hearing. There is nothing in the record to support Hayes's allegations of ineffectiveness.

■ The sixth amendment guarantee of effective assistance of counsel does not entitle the accused to error-free representation. Rather, a criminal defendant is entitled to counsel "reasonably likely to render and rendering reasonably effective assistance" given the totality of the circumstances. *Washington v. Strickland,* 693 F.2d 1243, 1250 (5th Cir.1982); *Washington v. Watkins,* 655 F.2d 1346, 1356 (5th Cir.1981); *Beavers v. Balkom,* 636 F.2d 114, 115 (5th Cir.1981). A petitioner who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of

the evidence. *Washington v. Strickland,* at 1250. Here we find that Hayes has not carried his burden.

## D.

Hayes finally contends that his *Boykin* examination did not accurately reflect the terms of the plea bargain under which he pleaded guilty. He claims that the district attorney and his assistant promised that after ten years and six months he would be eligible for release on parole if he would agree to plead guilty. Since Hayes received a life sentence without automatic commutation and remains ineligible for parole, he alleges that the state has broken its plea bargain.

■ In Louisiana no person receiving a life sentence is eligible for parole unless the sentence is commuted to a specific number of years. La.R.S. 15:574.[1] The power to commute sentences rests with the governor upon recommendation of the pardon board. La.R.S. 15:572. Thus, the district attorney had no inherent power to promise, nor did the judge have the power to grant, automatic commutation of Hayes's life sentence.

■ The district court found that the weight of the evidence supported a conclusion that the plea bargain consisted only of the prosecutor's promise to drop the attempted armed robbery charge. After a thorough review of the record we find that finding clearly erroneous and reverse the district court.

Let us emphasize that we are presented little choice in the circumstances here. Neither the district attorney nor his assistant who engaged in the undenied plea bargaining was called to testify. No witness refuted either the petitioner's explicit testimony about the promise, or that of his witness who, on the record before us, was not discredited.

According to the record of the evidentiary hearing, Charles Wood, Hayes's high school teacher and friend who advised and counseled him during his incarceration, testified that on the day of the trial, he, petitioner's court-appointed attorney, the district attorney, and the assistant district attorney met in the hall outside the courtroom at which time the district attorney said that "if we get him to plead guilty and turn state witness, he would get the benefit of—the benefits of parole and all, which—and it would cut like this, like, life sentence be commuted to thirty-three years, and he would be up for parole after ten years and some—I think six months—and they would recommend he go to deQuincy to spend his time." This representation was in addition to the dropping of the attempted armed robbery charge.

Wood was thoroughly questioned on cross-examination at which time the assistant district attorney handling the habeas hearing noted that Wood took no notes on the day in question and was in fact testifying from memory. Although Wood could not recall the specific date of the alleged plea bargain, he testified that it was "outside the courtroom on the day of the trial when Alton Moran was in this court."[2] Wood encouraged Hayes to plead guilty, he said, because of the assurance given to him by the district attorney that the sentence would then automatically be cut to thirty-three years. No one has raised any question which would reflect on Wood's basic credibility. Certainly no one denied or contradicted his testimony.

The court-appointed attorney does not recollect the substance of any of the conver-

---

1. Although the commutation laws were changed in 1979, the law in effect at the time Hayes pled guilty nevertheless required that the governor commute a life sentence to a specific number of years before a defendant could be eligible for parole. At that time the commutation could be granted upon the written recommendation of the lieutenant governor, attorney general and presiding judge of the court before which the defendant was convicted or

any two of them. *See Terrebonne v. Blackburn,* 646 F.2d 997, 1000 (5th Cir.1981) (en banc).

2. Although this is a direct quote from the transcript of the evidentiary hearing, it is more likely that the transcript should have read "Alton Ramsey", one of the co-defendants, rather than "Alton Moran", the magistrate who was presiding at the evidentiary hearing.

sation. Neither of the other parties to the conversation, the district attorney and the assistant district attorney, testified. The state relied only on the content of the plea bargain presented at the *Boykin* hearing which revealed that the attempted robbery charge would be dropped if Hayes pleaded guilty.

> The Court: There has been a plea bargain?
>
> Prosecutor: Yes, sir.
>
> The Court: To the effect that he would not be prosecuted for the armed robbery?
>
> Prosecutor: Yes, sir. In view of the plea of guilty as charged to the murder indictment, the state will not prosecute the . . . attempted armed robbery.

&#9644; The law is clear that an unkept plea bargain [3] is a valid basis for the grant of the writ of habeas corpus where the petitioner has proved: 1) exactly what the terms of the alleged promise were; 2) exactly when, where, and by whom such a promise was made; and 3) the precise identity of an eyewitness to the promise. *Blackledge v. Allisson,* 431 U.S. 63, 76, 97 S.Ct. 1621, 1630, 52 L.Ed.2d 136 (1977).

Hayes has satisfied these elements. He testified as to the exact terms of the promise, and this promise was verified by Wood. No one has questioned the general credibility of Wood nor was his testimony as to the time and place of, and the persons present at, and the substance of the plea bargain negotiations refuted. Moreover, according to the Magistrate's report, the petitioner's court-appointed attorney "also stated that he told the petitioner that he would be eligible for parole in ten years and six months. . . ." The district court discounted Wood's testimony because Wood testified that he was testifying "from memory" and

had not kept notes. The court accepted the state's argument without any testimony from anyone who witnessed or participated in the plea discussion for the state.

Notwithstanding this explicit, unrefuted and uncontradicted testimony, the district court held that

> where a petitioner simply contends that his plea was not understandably entered, and offers no specific allegation to support that claim, the claim is insufficient to justify the grant of a habeas corpus petition. *See Clayton v. Blackburn,* 578 F.2d 117 (5th Cir.1978) (". . . it is . . . the petitioner's burden in a habeas corpus proceeding to demonstrate . . . those facts that establish a constitutional violation. *id.* at 120.) *Grant v. State of Georgia,* 358 F.2d 742 (5th Cir.1966) ("mere conclusory allegations will not suffice."). (*See also United States v. Frontero,* 452 F.2d 406 (5th Cir.1971).

The court thus found on the basis of the evidence that Hayes was promised only that the armed robbery charge would be dropped, and that in any case, Hayes did not rely on a promise of automatic commutation of his sentence when he made his guilty plea.

&#9644; From the record before us we hold that this finding is clearly erroneous. To make such a finding, after reviewing the entire evidence, we must be left with the definite and firm conviction that a mistake has been committed. *United States v. Gypson,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 97 L.Ed. 746 (1948); *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 258 (5th Cir.1980). Under the circumstances of this case we are firmly convinced that a mistake has been committed here. We repeat: the promise specifically and unequivocally shown by the

---

**3.** We do not wish to imply here that either the District Attorney or the Assistant District Attorney deliberately misrepresented the parole eligibility date to the defendant or that either acted in bad faith in making these representations to the defendant. It may well be, as was urged at oral argument, that a life sentence in 1973 was tantamount to eligibility for parole in ten years and six months because of the virtually routine commutation practice at the time.

This does not detract, however, from the fact that eligibility for parole in ten years and six months was part of the plea bargain upon which the defendant relied. Whether we view this as a plea bargain that was deliberately broken, *which we do not,* or as one which was not fulfilled for reasons beyond the control of the state's attorney, is immaterial to the result that we must reach in this case. The voluntariness of the plea is affected in either case.

petitioner's evidence to have been made by the district attorney was never refuted by the attorney for the petitioner, nor by the district attorney, nor the assistant district attorney. Wood's testimony simply cannot be characterized as "not offering specific allegations" or as "mere conclusory allegations."

We therefore have no choice but to grant the petitioner's writ of habeas corpus *subject* to the provisions we set out below. We note that the time has not yet expired for the state to live up to its plea bargain. All that the state must do to meet the terms to which the district attorney committed it is to commute the sentence so that the petitioner is *eligible* for parole in ten years and six months from the time he began serving his sentence.[4] The State may not wish to pursue this course, and it does not have to do so. The other alternative for the state is to vacate the plea of guilty, allow the petitioner to enter a new plea, and, upon his plea of not guilty, try him on the indictment under which he is charged.

### IV.

This case is remanded for the foregoing reasons and with the following instructions. The writ is to be granted by the district court if within ninety days from the date of the mandate herein the state either has not fulfilled the terms of its plea bargain to assure petitioner's eligibility for parole upon his serving ten years and six months of his sentence, or has not vacated the petitioner's plea of guilty and begun trial proceedings against him.

REVERSED AND REMANDED.

---

4.  We emphasize the word eligible. There is no evidence that the petitioner was promised *re-* *lease* at any time in the future.