James DUNN, Petitioner-Appellant,

v.

Ross MAGGIO, Jr., Warden, Louisiana State Penitentiary, et al., Respondents-Appellees.

No. 83-3099

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Aug. 22, 1983.

James Dunn, pro se.

Julie E. Cullen, Asst. Atty. Gen., Baton Rouge, La., for respondents-appellees.

Before RUBIN, JOHNSON and WILLIAMS Circuit Judges.

PER CURIAM:

Petitioner was indicted for murdering a fellow inmate at the Louisiana State Penitentiary and pleaded guilty without capital punishment in June of 1964, receiving a sentence of life imprisonment. Apparently there was no direct appeal, but petitioner filed four state habeas corpus petitions, asserting the invalidity of his guilty plea. Relief was denied by the Louisiana Supreme Court in *State ex rel. Dunn v. Henderson,* 255 La. 819, 233 So.2d 253 (La.1970) and *State ex rel. Dunn v. Henderson,* 302 So.2d 620 (La.1974).

In his fourth state habeas corpus petition filed in April or May 1981, he sought postconviction relief on the two grounds he asserts in his instant section 2254 petition: (1) his plea was involuntary because it was based on inadequate advice regarding the possible sentence which could be imposed, namely, he understood that he would serve only 10 years and 6 months on a life sentence and (2) the repeal of former La.Rev. Stat.Ann. § 15:571.7 violated the *ex post facto* provision of the U.S. Constitution because it deprived him of the benefit of receiving automatic consideration for commutation of sentence. An extensive evidentiary hearing was held by the state trial court commencing on June 11, 1981. On July 31, 1981, that court vacated and set aside his conviction, stating that his guilty plea was involuntary because it was influenced to a significant degree by his expectation that he would serve only ten years and six months of his life sentence. The State's application for certiorari was granted by the Louisiana Supreme Court, which reversed the judgment of the state trial court and reinstated the conviction. *State v. Dunn,* 408 So.2d 1319 (La.1982). The Louisiana Supreme Court held that petitioner's allegation that he understood he would serve only ten years and six months

of a life sentence constituted a mere expectation which did not undermine the voluntariness of his guilty plea. *Id.* at 1321. The Court further held:

> On the morning set for trial, defendant withdrew his initial plea and entered a plea of guilty without capital punishment. His attorney testified that defendant was aware of the consequences of being tried and convicted of murder. He was aware of what the lesser crimes were and the penalties therefor. Nevertheless, he chose to plead guilty without capital punishment knowing that he would receive a life sentence. These facts are undisputed by defendant. He understood that commutation of his sentence was not guaranteed, but that it was more probable than not if he maintained good behavior. When asked at the evidentiary hearing whether he was told that life meant "10–6," defendant responded, "I got that impression." The record clearly shows, therefore, that his guilty plea was not induced by the state; he was not promised anything in exchange for his plea. Defendant entered his plea based on a rational knowledge of the alternatives that were available to him. He was aware of the relevant circumstances and likely consequences of his plea, including the fact that commutation of his sentence might well rest on his good behavior while in prison. We think, under these circumstances, defendant knowingly and voluntarily entered his guilty plea.

408 So.2d at 1321.

The Louisiana Supreme Court rejected petitioner's claim that the repeal of former La.Rev.Stat.Ann. § 15:571.7 subjected him to a greater sentence because it deprived him of the benefit of receiving automatic consideration for commutation of sentence. That court stated as follows:

> R.S. 15:571.7 was repealed by Act 490 of 1979. The repealed statute did not, however, provide for automatic consideration of commutation of life sentences by the governor. Moreover, this practice by the Department of Corrections was mandated neither by statute nor the Constitu-

tion, and therefore never acquired the effect of law. R.S. 15:571.7 created a statutory right that permitted prisoners to apply for commutation of their life sentences and provided the procedure therefor. Defendant may still exercise that right under the rules established by the Board of Pardons pursuant to R.S. 15:572, et seq. See Rules of the Department of Corrections on Board of Pardons, 5 La.Reg. 345 (1979).

We conclude, therefore, that defendant knowingly and voluntarily entered his guilty plea, and the repeal of R.S. 15:571.1 has not operated to deprive defendant of any statutory or constitutional right.

408 So.2d at 1322 (footnote omitted).

After exhausting state remedies, petitioner brought his first federal habeas corpus petition, challenging the validity of his guilty plea. The district court, adopting the report of the magistrate, denied the petition. This Court denied petitioner's application for a certificate of probable cause and for leave to appeal in forma pauperis.

The instant case, involving petitioner's second federal habeas corpus petition, was heard by a magistrate pursuant to 28 U.S.C. § 636(c). The magistrate denied section 2254 relief, finding that testimony at the state evidentiary hearing showed as follows: (1) at the time petitioner entered his guilty plea it was common knowledge among the bench and bar that life imprisonment generally meant ten years and six months with good behavior; (2) the presiding judge at petitioner's conviction testified that he properly advised petitioner of the then-existing laws and of the fact of the possibility and not the guarantee of his release at the end of ten years and six months of good behavior; (3) one of petitioner's trial attorneys testified that he told petitioner that commutation of his sentence to "10-6" was not guaranteed, but that petitioner knew that "the odds were great in his favor" that his sentence would be commuted and that if commutation were granted, "the odds were equally great" that he would be granted parole at that time; (4) whether or not petitioner understood the consequences of his guilty plea did not depend on his subjective testimony; (5) the factual issue was resolved by the Louisiana Supreme Court based upon "the surrounding facts and circumstances," including the testimony of petitioner's counsel and the then-presiding judge. The magistrate ruled that this factual determination was entitled to great weight, noting that a state supreme court's factual findings are entitled to the presumption of correctness granted by 28 U.S.C. § 2254(d) in federal habeas corpus actions.

Rejecting petitioner's contention that the repeal of La.Rev.Stat.Ann. § 15:571.7 violated the ex post facto provision of the Constitution, the magistrate found that (1) Section 15:571.7 did not "intend any sentence" in that it did not mandate a favorable recommendation from the Pardon Board nor did it require the Governor to commute the sentence if certain conditions were met; (2) Section 15:571.7 merely provided a procedure to be followed when an inmate wanted to seek commutation of his sentence; (3) arguably, the prisoner's position was even improved after the repeal, as he could now file an application at any time instead of having to wait for the expiration of ten years and six months as required by the former statute.

Petitioner filed a timely notice of appeal. A certificate of probable cause was granted and petitioner was permitted to proceed in forma pauperis.

I.  *Voluntariness of Guilty Plea*

Petitioner claims that his guilty plea was entered unintelligently and involuntarily because he understood he would serve only ten years and six months.[1] Section 2254(d) requires federal courts in habeas corpus proceedings to accord a presumption of correctness to state court findings of fact or explain why the presumption is not applicable in view of the factors listed in

---

1. Although the State did not raise the point, it appears that petitioner's claim is a successive claim pursuant to Rule 9(b), Rules Governing Section 2254 cases.

the statute. *Sumner v. Mata,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982). This presumption applies to factual determinations made by both state trial and appellate courts. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). A federal court may not substitute its own judgment as to the credibility of witnesses for that of the Louisiana courts. *See Maggio v. Fulford,* —— U.S. ——, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983). The high measure of deference to which a state court's factual findings are entitled requires that a federal court, considering an application for habeas corpus, more than simply disagree with the state court before rejecting its factual determinations; instead, it must conclude that the state court's findings lacked even fair support in the record. *Marshall v. Lonberger,* —— U.S. ——, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983). In the instant case petitioner's trial counsel testified, in answer to the question whether petitioner was ever advised that the 10–6 commutation was guaranteed, that petitioner was told there was no guarantee but that "it would more than likely be granted." The judge who accepted petitioner's plea testified as follows:

I think Mr. Picou was ... Mr. Picou and Mr. Jackson were the court appointed counsel and there was a recommendation to accept a plea of guilty in return for a sentence for life. The State accepted it and I accepted it, yes.

Q. [D]id you or to your knowledge did anyone else make any representations to Mr. Dunn as to what that life sentence actually amounted to?

A. I think the minutes of the court will indicate that the courts operated in a different manner in those days. The Judge did not participate in plea bargaining arrangement and such was not the case.

I think what you have reference to that on a sentence of that nature and in the 1960's the District Judges were a member of the pardon board. The pardon board in the 60's was composed of the Lt. Governor, Attorney General, and the sentencing judge. At the time I imposed a sentence of life, I probably admonished the defendant if he ever wanted to get out of the penitentiary, he would have to go up there and make a good record, because if he did in 10 years and six months, he would be meeting the pardon board and I would be a member of that board, and that I would vote in his favor. But if he didn't conduct himself properly at the penitentiary I would probably be voting adversely. 10 years and six months was a life sentence. Almost with certainty in the 60's, yes.

Q. In your experience as a trial judge and thus a member of the pardon board, that people who received life sentences were rather routinely granted commutation of sentence?

A. The time was fixed, yes. If they did not have an adverse record at the penitentiary, the life sentence was fixed at 10 years and six months. Which made them eligible probably for parole and other clemency, yes.

■ The judge further testified that there was no guarantee of a "10–6" when he sentenced petitioner. The findings of the Louisiana Supreme Court are fairly supported by the record.

## II. *Ex Post Facto Violation*

■ La.Rev.Stat.Ann. § 15:571.7 provided as follows:

Whenever a prisoner who has been convicted of a crime and sentenced to imprisonment for life, so conducts himself as to merit the approval of the superintendent of the state penitentiary *he may apply* for a commutation of his sentence and the application, upon approval of the superintendent, shall be forwarded to the governor. The governor *may* commute the sentence upon the recommendation in writing of the lieutenant governor, attorney general, and presiding judge of the court before which the conviction was had or any two of them. No commutation under this Section shall reduce the period of incarceration to less than ten years and six months. (emphasis added).

This statute did not provide a prisoner with a constitutional right to a pardon or early release from a valid sentence. *See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *see also, Garrett v. Maggio,* 685 F.2d 158, 160 (5th Cir. 1982).

The denial of petitioner's habeas corpus petition is affirmed.

AFFIRMED.